UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SNOHOMISH COUNTY, | Case No. C07-875MJP |
| Plaintiff, | ORDER DENYING MOTIONS FOR SUMMARY JUDGMENT |
| v. | |
| GARY R. BOWERS, et al., | |
| Defendants. | |

This matter comes before the Court on the United States' motion for summary judgment (Dkt. No. 36), the State of Washington's cross-motion for summary judgment (Dkt. No. 43), and Defendant Gary Bowers' motion for dismissal and cross-motion for summary judgment (Dkt. No. 56). Having considered the motions, all responses, replies, and supplemental briefs, all documents submitted in support and the balance of the record, the Court DENIES all three dispositive motions.

**Background**

**I. Procedural History**

In 2006, the Snohomish County Treasurer sold a parcel of real property, identified as Tax Parcel No. 00401100005300 or "Lot 53," at public auction pursuant to RCW 84.64.080. (Dkt. No. 1, Compl., Ex. E.) At this tax foreclosure sale, which apparently resulted from Defendant Gary Bowers not paying all property taxes, the highest bid exceeded the unpaid taxes and costs by $29,498.57 (the "excess proceeds"). (Id.) Regarding disposition of these excess proceeds, Washington law provides "the excess shall be refunded following payment of all recorded water-

ORDER — 1

sewer district liens, on application therefor, to the record owner of the property. The record owner of the property is the person who held title on the date of issuance of the certificate of delinquency." RCW 84.64.080. A Tax Foreclosure Certificate issued to the Snohomish County Treasurer on June 29, 2006, by Pacific Northwest Title Company identifies the record title holders of the subject property as "GARY R. BOWERS, as his separate estate, as to Lot 53, and GARY WERNER, as his separate estate, as to the remainder." (Compl., Ex. E.)

Gary R. Bowers applied to the Snohomish County Treasurer for these excess proceeds on February 15, 2007. (Id., Ex. A.) On March 14, Gary Werner's sister, Sandy Welfelt, applied for the excess proceeds, claiming that she was the record title holder. (Id., Ex. C.) Soon after, the Snohomish County Treasurer received a Notice of Levy from Defendant United States against any money belonging to Gary Werner. (Id., Ex. B.) This levy was based on a Federal Tax Lien filed on December 7, 2005. (Id.) In April 2007, the Snohomish County Treasurer received an Order to Withhold and Deliver – Property and Accounts from Defendant State of Washington against any money belonging to Gary Werner. (Id., Ex. D.) This order was based on 2004 and 2006 liens filed against Gary Werner by the Washington Department of Social and Health Services ("DSHS") for unpaid child support. Gary Werner did not apply for the excess funds from the foreclosure sale.

In May 2007, Snohomish County brought this interpleader action in the Snohomish County Superior Court to determine the proper recipient of the excess proceeds and to protect itself from multiple liability. (Dkt. No. 1.) Defendants removed the action in June 2007. This Court dismissed Plaintiff Snohomish County from this suit and enjoined Defendants from proceeding against the County in September 2007. (Dkt. No. 22.) In October 2007, the Court dismissed Defendant Gary Werner because he disclaimed any interest in the excess proceeds. (Dkt. No. 23.) Although she answered the complaint by asserting her interest in the excess funds, in March 2008, Sandy Welfelt disclaimed any interest in the excess funds and stipulated to her dismissal. (Dkt. No. 34.)

ORDER — 2

Gary Bowers is proceeding pro se and is currently incarcerated in Arizona after being convicted of attempting to murder Gary Werner. See State v. Bowers, 129 Wn. App. 1039 (2005) (unpublished). In April, the United States and State of Washington submitted cross-motions for summary judgment regarding which of the two had priority to the excess funds; the United States also requested that the Court enter default judgment against Mr. Bowers. The briefing did not address Mr. Bowers' interest, if any, in the funds as a record title holder. On May 30, the Court denied the United States' motion for default judgment against Mr. Bowers, ordered Mr. Bowers to file a responsive pleading, and ordered all parties to submit additional briefing on the issue of who is the proper recipient of the excess funds under RCW 84.64.080. (Dkt. No. 52.) All parties responded, including Mr. Bowers who filed a motion to dismiss / cross-motion for summary judgment. (See Dkt. No. 56.) The Court then struck the trial date to allow the parties additional time to file responsive briefs. (Dkt. No. 58.) These issues are now fully briefed and ripe for consideration.

## II. Ownership / Lien History

This piece of property in Snohomish County has a complicated ownership and lien history. Following is a chart outlining the chronological history of ownership of and liens upon Lot 53:

| DATE | EVENT | DOCUMENT |
|---|---|---|
| 03/06/90 | Robert and Dorea Woods sell Lot 53 to Gary Werner for $500 down payment plus $3500 to be paid in $50 monthly installments. Real estate contract recorded 03/14/90. AF # 9003140450. | Dkt. No. 36-2, Real Estate Contract. |
| 02/20/91 | Woodses grant Lot 53 via statutory warranty deed to Gary Bowers, "assignee of contract dated 3-6-90 AF #9003140450" for $10 plus "other good and valuable consideration." Deed Recorded 06/05/01. | Dkt. No. 56, Statutory Warranty Deed. |
| 01/26/94 | Gary Werner ordered to pay $447/month in child support. | Dkt. No. 45, Order of Child Support. |

ORDER — 3

| | | |
|---|---|---|
| 06/27/94 | DCS files lien for $2,806 against Werner property. | Dkt. No. 45, Wilson Decl. ¶ 5 (noting that lien was satisfied & released in 2005). |
| 11/06/95 | Federal tax assessments against Werner issued for 1988, 1989, 1992 and 1993 tax years. | Dkt. No. 36-2, Exs. C-F. |
| 02/13/96 | DCS files lien for $5,716 against Werner property. | Dkt. No. 45, Wilson Decl. ¶ 5 (noting that lien was satisfied & released in 2005). |
| 08/09/96 | Federal tax lien for $81,305 assessed on all Werner property. | Dkt. No. 36-2, Ex. G. |
| 10/28/96 | DCS files lien for $11,378 against Werner property. | Dkt. No. 45, Wilson Decl. ¶ 5 (noting that lien was satisfied & released in 2005). |
| 02/11/98 | DCS files lien against proceeds Werner received in estate action property for $3,467. | Wilson Decl. ¶ 6. |
| 01/22/99 | Werner stipulates in Snohomish County case that he currently owns Lot 53. | Dkt. No. 36-2, Vint v. Werner, No. 94-2-04976-1, ¶ 10. |
| 05/30/01 | Werner quit claims Lot 53 to Bowers. Deed states that Werner transfers the 03/06/90, AF # 9003140450, real estate contract between Woods and Werner. Recorded on 06/05/01. | Dkt. No. 56, Purchaser's Assignment of Contract and Deed. |
| 05/20/03 | Sound Investment Partners LLC quit claims Lot 53 (and other property) to Sandy Welfelt for no consideration. Deed recorded 11/13/03. | Dkt. No. 54. |
| 09/03/03 | Real Estate Tax Affidavit filled out by Bowers / Sound Investment Partners LLC describing "gift" to Sandy Welfelt of Lot 53. | Dkt. No. 54. |
| 10/08/04 | DSHS lien issued for $19,072 against Werner. | Dkt. No. 45, Wilson Decl., Ex. 2. |
| 12/07/05 | IRS refiles federal tax lien against Werner. | Dkt. No. 46, Malloy Decl., Ex. A (lien refiling); Ex. C. |
| 07/31/06 | DSHS lien issued for $18,545 against Werner. | Dkt. No. 45, Wilson Decl., Ex. 3. |

**Discussion**

**I.     Summary Judgment Standard**

Summary judgment will only be granted when there is no genuine issue as to any

ORDER — 4

material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion, and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. Calderone v. United States, 799 F.2d 254, 259 (6th Cir. 1986). On an issue where the nonmoving party will bear the burden of proof at trial, the moving party can prevail merely by pointing out to the district court that there is an absence of evidence to support the non-moving party's case. Catrett, 477 U.S. at 325. If the moving party meets its initial burden, the opposing party must then set forth specific facts showing that there is some genuine issue for trial in order to defeat the motion. Anderson v. Liberty Lobby, 477 U.S. 242, 250 (1986).

## II. Entitlement to Funds

In this document-heavy case, the Court is asked to determine on summary judgment who is entitled to $29,000 in excess proceeds from a foreclosure sale. To do so, the Court must determine (a) the record owner of the property at the time of the foreclosure sale, (b) the record owner at the time any liens attached, and (c) priority among the claimants. The Court must also determine whether any transfers of the property were made in an effort to defraud Gary Werner's creditors. The burden is on the party making a claim for the funds to show that he or she is entitled to those funds. Gary Bowers claims that he is entitled to all the funds and Washington and the United States both claim that they are entitled to a portion of the funds.

### A. Priority Between the United States and Washington

Both the United States and the State of Washington have viable liens on any property owned by Gary Werner. Initially, they disputed which of their liens had priority over the other. Priority between a judgment lien creditor and the IRS is determined by the "first in time, first in right" principle. IRS v. McDermott, 507 U.S. 447, 449 (1993). The United States and

ORDER — 5

Washington now agree that the 2004 DSHS lien has priority over the federal tax lien. (See Dkt. No. 50, DSHS Surreply, at 1; Dkt. No. 50-3, Donnelly Decl. ¶ 4; Dkt. No. 55, United States' Supp. Brief at 4-5.) Although the federal tax lien was originally executed in 1996, the United States admits that it failed to timely re-file the lien, and that its claim is therefore junior to Washington's 2004 claim. Washington asserts that $12,413.44 remains on its 2004 child custody lien. (Donnelly Decl. ¶ 4.) The parties agree that Court should award $12,413.44 of the excess proceeds to Washington, and the remainder to the United States. However, whether either of these liens affects distribution of the excess proceeds depends on whether Gary Werner owned Lot 53 when the liens were executed or after they were executed, or when Snohomish County sold the property in the tax foreclosure sale.

### B. Ownership of Lot 53

The question of who owned or owns Lot 53 is not clear. Issues of material fact exist regarding (1) who owned the property when the liens attached and (2) who owned the property at the time of the foreclosure sale.

#### 1. Ownership when liens attached

The parties' documents, declarations, and responses to interrogatories suggest that Gary Bowers owned Lot 53 when the liens attached. In 1990, Robert and Dorea Woods contracted to sell Lot 53 to Gary Werner via a real estate contract for $500 down plus $3500 to be paid in $50 monthly installments.[1] But in 1991, apparently because Werner could not make the payments, Bowers assumed the contractual obligations, and the Woodses conveyed Lot 53 to Gary Bowers via statutory warranty deed.[2] In 1996, the IRS issued its original lien. Although the deed to Bowers was not recorded until 2001, Bowers' ownership of the property at the time the federal

---

[1] The record does not contain any deed documenting this conveyance.

[2] A statutory warranty deed is a conveyance device that transfers title to the property and guarantees that there is free and clear title without any encumbrances. Mastro v. Kumakichi Corp., 90 Wn. App. 157, 162 (1998). A quit claim deed, on the other hand, transfers title, but makes no warranty regarding the status of the title. See Scramlin v. Warner, 69 Wn.2d 6, 10 (1966).

ORDER — 6

tax liens issued is not affected. Washington courts are clear that the recording statute, RCW 65.08.070, only protects subsequent <u>purchasers</u> of the property and does not protect subsequent creditors. <u>Aberdeen Fed. Savings & Loan Assn. v. Empire Manufactured Homes, Inc.</u>, 36 Wn. App. 81, 84 (1983) (holding that because judgment creditor parts with no consideration and does not rely on the record title, under RCW 65.08.070, a previous unrecorded mortgage is valid against the later judgment). Thus, if Bowers held title to Lot 53 as of 1991, that title was not encumbered by any subsequent federal tax lien, even though Bowers did not record until 2001.

However, in 1999, Werner participated in litigation in Snohomish County over an adjacent swath of property. As part of that litigation, he agreed to a stipulated set of facts that include the fact that he — Gary Werner — owned Lot 53 at that time. (<u>See</u> Dkt. No. 36-2, <u>Vint v. Werner</u> Stipulated Facts ¶ 10.) And in 2001, Werner executed a quit claim deed regarding Lot 53 in favor of Bowers. (Dkt. No. 56.) Bowers and Werner state in their declarations that this quit claim deed was meant to correct an error with the title company that had continued to list Werner as the record owner. (Dkt. No. 56, Werner Decl.; Dkt. No. 60, Bowers Decl. ¶¶ 8-12.) Werner also asserts that he "never legally owned" Lot 53. (Dkt. No. 56, Werner Decl.) But the stipulated set of facts in <u>Vint v. Werner</u>, plus the quit claim deed, plus the title company record that lists Werner as a record title holder, all raise an issue of fact about who actually owned the property in 1996 when the federal lien first attached.

The final (attempted) transfer of Lot 53 occurred in 2003 when an entity named "Sound Investment Partners LLC" purported to convey by quit claim deed Lot 53 and other property to Gary Werner's sister, Sandy Welfelt. From the transferring documents, it appears that Sound Investment Partners was a corporation owned by Bowers and his wife.[3] Although the deed was recorded, the 2006 title search did not list Welfelt as a record title holder. Bowers states in his responses to the Government's interrogatories that he "mistakenly transferred to Sandy Welfelt"

---

[3] The State of Washington asserts that this transfer occurred from Gary Bowers <u>and</u> Gary Werner to Sandy Welfelt, but the documentation belies that assertion.

ORDER — 7

and that he had forgotten that Lot 53 was not owned by Sound Investment Partners. (Dkt. No. 51 at 6 & 9.) Because Sound Investment Partners did not hold title to Lot 53, it could not have conveyed title to Sandy Welfelt. It appears, therefore, that this quit claim deed to Welfelt had no effect on title to the property.

In 2004 and 2006, DSHS issued new liens on any Werner property for unpaid child support. Earlier liens were released in 2005. In 2005, the IRS re-filed its federal tax lien. Based on the evidence presented, it does not appear that Werner held title to the property during this period or after and so these liens did not attach to Lot 53. However, there are genuine issues of material fact regarding who owned the property when the original federal lien was issued in 1996. If Werner held title to the property at that point, then Lot 53 remains encumbered by that federal lien.[4] See United States v. Donahue Indus., Inc., 905 F.2d 1325, 1331 (9th Cir. 1990) ("The [federal tax] lien continues to attach to a taxpayer's property regardless of any subsequent transfer of the property.").

### 2. Ownership at time of sale

Under RCW 84.64.080, the excess proceeds of a tax foreclosure sale "shall be refunded following payment of all recorded water-sewer district liens, on application therefor, to the record owner of the property. The record owner of the property is the person who held title on the date of issuance of the certificate of delinquency." A Tax Foreclosure Certificate issued to the Snohomish County Treasurer on June 29, 2006 by Pacific Northwest Title Company and attached to the complaint identified the record title holders of the subject property as "GARY R. BOWERS, as his separate estate, as to Lot 53, and GARY WERNER, as his separate estate, as to the remainder." (Compl., Ex. E.) That document conflicts with both Bowers' and Werners' statements in which they both agree that <u>Bowers</u> owned the property. And it conflicts with the

---

[4] A subsequent owner like Bowers may be protected from a previously attached federal tax lien if that person is a "purchaser" or "judgment lien creditor" under 26 U.S.C. § 6323(a). But even thought the United States asked him about it in its interrogatories, Bowers has not argued that his title ownership should be protected under that statute.

ORDER — 8

2001 quit claim deed (which was recorded in 2001) that conveyed any remaining interest Werner had in the property to Bowers.

On June 30, 2008, Gary Bowers filed with the Court a new Tax Foreclosure Certificate that is dated June 29, 2006, but indicates that the record title holder for Lot 53 is "GARY R. BOWERS, as his separate estate, as to Lot 53 and ROBERT C. WOODS and DOREA M. WOODS, husband and wife as to the remainder." (See Dkt. No. 61.) It is not clear why Pacific Northwest Title has issued this amended certificate. No declaration from any employee at the title company has been filed. In a declaration filed a few days prior, Bowers states that Werner had been in contact with the title company in June 2008 and that the company would be filing a document correcting a previous error in its records listing Werner as a record title holder. (Dkt. No. 60, Bowers Decl. ¶ 13.) Bowers suggests that this error may have resulted from an imprecise division of property in the Snohomish County case, Vint v. Werner. (Id. ¶¶ 8-10.) Neither the State of Washington nor the United States have offered any evidence or argument rebutting this new Tax Foreclosure Certificate. If accepted as true, this document would offer further proof that Gary Bowers was the record property holder at the time of the tax foreclosure sale and that he is therefore due the excess proceeds.[5] Nevertheless, the Court must still consider whether Bowers' interest in the property was encumbered by the federal lien (discussed above) and/or whether any transfers from Werner were made fraudulently (discussed below).

**C.  Fraudulent Transfer**

Both the United States and the State of Washington argue that their claims to the excess funds are valid because Gary Werner's transfer of Lot 53 to Gary Bowers was fraudulent. Under Washington's Uniform Fraudulent Transfer Act, a conveyance is void as to a particular creditor if the conveyance was made to avoid paying debts. RCW 19.40 et seq. Both intentional and

---

[5]  Although neither the State nor the United States offer any evidence rebutting this new certificate, the Court is hesitant to accept it without contextual support. It would be helpful to the finder of fact to have a declaration or testimony from a title company employee explaining why this amended certificate was issued.

ORDER — 9

constructive fraud are condemned by the statute. If either the 1991 transfer from the Woodses to Bowers or the 2001 transfer from Werner to Bowers is fraudulent under the Act, then that transfer would not act as a bar to the liens attaching to Lot 53.

RCW 19.40.041 provides that "[a] transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred," if the transfer was fraudulent. Under the intentional fraud provision, fraud may be shown by "actual intent to hinder, delay, or defraud any creditor of the debtor." RCW 19.40.041(a)(1). In determining actual intent, consideration may be given, among other factors, to whether:

   (1) The transfer or obligation was to an insider;

   (2) The debtor retained possession or control of the property transferred after the transfer;

   (3) The transfer or obligation was disclosed or concealed;

   (4) Before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;

   (5) The transfer was of substantially all the debtor's assets;

   (6) The debtor absconded;

   (7) The debtor removed or concealed assets;

   (8) The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;

   (9) The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;

   (10) The transfer occurred shortly before or shortly after a substantial debt was incurred; and

   (11) The debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

RCW 19.40.041(b). Actual intent to defraud must be shown by the party alleging the fraudulent conveyance by "clear and satisfactory proof." Sedwick v. Gwinn, 73 Wn. App. 879, 885 (1994).

The Act also allows a showing of constructive fraud:

ORDER — 10

> A transfer . . . is fraudulent as to a creditor . . . if the debtor made the transfer . . .
>
>> (2) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor . . .
>>
>>> (ii) Intended to incur, or believed or reasonably should have believed that he or she would incur, debts beyond his or her ability to pay as they became due.

RCW 19.40.041(a)(2). Under RCW 19.40.051, constructive fraud also occurs where the transfer is made without receiving reasonable consideration and the debtor was insolvent at that time or became insolvent as a result of the transfer. RCW 19.40.051(a). A debtor who is generally not paying his debts as they become due is presumed to be insolvent. RCW 19.40.021(b). Constructive fraud must be shown by "substantial evidence." Sedwick, 73 Wn. App. at 885.

### 1. Intentional Fraud

The United States and State of Washington both argue that Werner intended to avoid paying his state and federal debts when he transferred the property to Bowers. The United States focuses on the 2001 quit claim transfer; Washington asserts that both the 1991 and 2001 transfers were fraudulent. The evidence regarding both is inconclusive. In terms of the 1991 transfer, Bowers assumed Werner's debt to the Woodses before the United States or Washington had assessed any liens on Werner's property. The State of Washington's argument that Werner "gifted" the property to Bowers is contradicted by Bowers' undisputed assertion that he paid $50 a month to the Woods, and paid association dues and taxes on the property. Because it does not appear that Werner conveyed the property for less than it was worth in an effort to avoid debts, the Court cannot conclude on summary judgment that this transfer was fraudulent. The 2001 transfer may have been fraudulent — Werner transferred the property at a time when he was accumulating increasing debts and liens, he transferred it to an insider (a close friend), and it appears he transferred it for no additional consideration.[6] But both Werner and Bowers assert that the quit claim deed was only meant to "correct" a title company error regarding who was the record title holder. Because the statutory factors are only circumstantial evidence of intent,

---

[6] This, of course, assumes that Werner actually held an interest in Lot 53 at the time.

ORDER — 11

"where the debtor denies that his or her intent was to defraud, the issue cannot be conclusively determined by the trier of fact until it has heard testimony and assessed the witnesses' credibility." Id. at 887. Because Werner and Bowers have raised an issue about Werner's intent in executing the quit claim deed, summary judgment is not appropriate.

### 2. Constructive Fraud

Although a showing of constructive fraud is an easier burden, issues of material fact remain on this issue as well. The United States and Washington have established, and Bowers has not raised an issue of fact on the issue, that Werner did not receive consideration for the 2001 quit claim conveyance and that Werner was either insolvent at the time or should have reasonably believed that he would incur debts beyond his ability to pay as they became due. See RCW 19.40.041 & 19.40.051. At the time of the 2001 deed, both Washington and the United States had already executed liens on Werner's property because of his failure to pay taxes and child support. Nevertheless, as discussed above, it is not clear that Werner owned any of the property at that point. He and Bowers assert that the quit claim deed was intended only to correct a title company error — not to actually transfer any interest Werner had in the property. And this assertion is supported by the 1991 statutory warranty deed executed in favor of Bowers by the Woodses. Because it is not clear that Werner actually defrauded his creditors in 2001, summary judgment is not appropriate.

## III. Trial Preparation

Because there are unresolved issues of material fact, the Court must deny all three motions for summary judgment. Because Mr. Bowers is incarcerated, the Court and the parties need to work cooperatively to establish a plan for his participation at trial. Generally, inmates have no right to be personally present at civil judicial proceedings and have no constitutional entitlement to court-appointed counsel. Hernandez v. Whiting, 881 F.2d 768, 770-71 (9th Cir. 1989). Nevertheless, prisoner's have a right to access the courts and a trial court must make sure that the prisoner's allegations and evidence will be fully and fairly considered. Poole v. Lambert,

ORDER — 12

819 F.2d 1025, 1029 (11th Cir. 1987). The court has discretion regarding whether to allow an incarcerated litigant to participate in person in civil litigation. Courts should strive to balance the helpfulness of the prisoner's presence in resolving the issues against the difficulties of personal participation. Michael B. Mushlin, 2 Rights of Prisoners § 11:14 (Appearance in Court) (3d ed. Nov. 2007). Courts should consider various methods of bringing the litigant before the court, particularly where, as here, the prisoner's testimony is essential to the claim. Herndandez, 881 F.2d at 771. The Ninth Circuit has suggested various alternatives: a bench trial in the prison, trial by depositions, postponement of trial until the prisoner's release, or compelling the prisoner's presence through an ad testificandum writ. Id. Other courts have also suggested appointing counsel, allowing participation by telephone or video conference, or transferring the case to a more convenient forum. See Poole, 819 F.2d at 1028-29 (11th Cir. 1989); see also Mushlin, supra, at § 11:14.

      The Court is willing to consider a few of these options. Depending on the amount of time Mr. Bowers has remaining on his sentence, the Court would consider keeping the funds in an interest bearing account and staying the case until after he is released from prison.[7] The Court would also consider trial by deposition or trial by telephone or video conference. The Court will not consider transferring the case or conducting trial in the prison. And because Mr. Bowers seems to be very capable of representing himself, the Court will not appoint counsel. The Court orders the parties to confer either by telephone or by letter and discuss which option is most appropriate in this case. The parties shall present the Court with a joint status report regarding their recommendations for the most effective way to proceed within thirty (30) days of this order. That report should include information regarding the amount of time remaining on Mr. Bowers' sentence.

---

      [7] As of August 20, 2008, the funds remained in Snohomish County Superior Court. Counsel for the United States informs the Court that he is working to have those funds transferred to this Court, where they will be deposited in an interest-bearing account.

ORDER — 13

**Conclusion**

Because there are unresolved issues of material fact, summary judgment is inappropriate. The Court DENIES all parties' dispositive motions. The parties are instructed to confer and report back on a plan for moving this case forward within thirty (30) days.

The clerk is directed to send copies of this order to all counsel of record and to Mr. Bowers at his address of record.

Dated: August 28th, 2008.

*Marsha J. Pechman*
Marsha J. Pechman
United States District Judge

ORDER — 14