The Honorable Marsha J. Pechman

**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE**

| | |
|---|---|
| SNOHOMISH COUNTY, a political subdivision of the STATE OF WASHINGTON,<br><br>Plaintiff,<br><br>v.<br><br>GARY R. BOWERS, et al.,<br><br>Defendants. | Case No. C07-0875MJP<br><br>ORDER GRANTING DEFENDANT STATE OF WASHINGTON'S SECOND MOTION FOR SUMMARY JUDGMENT |

THIS MATTER comes before the Court on the State of Washington's second motion for summary judgment to distribute surplus funds from the sale of real property. (Dkt. No. 73.) The Court has reviewed the motion, the responses (Dkt. No. 87, 95), and all other pertinent documents in the record. For the reasons set forth below, the Court GRANTS Plaintiff's motion for summary judgment. The Court further DENIES Defendant Gary Bowers' motion for termination. (See Dkt. No. 95.)

**Background**

This is an interpleader action brought by Snohomish County to determine the proper recipient of the excess proceeds from the tax foreclosure sale of a parcel of real property, identified as Tax Parcel No. 00401100005300 ("Lot 53"). There are three remaining applicants for the proceeds of the sale: Gary R. Bowers, the United States, and the State of Washington (the "State"). In denying the State's previous motion for summary judgment, the Court described in some detail the ownership and lien history of the parcel and does not repeat that recitation here. (Dkt. No. 67.)

The Court's rulings in that Order are, however, pertinent to the disposition of the present motion. The Court determined that material disputes of fact existed as to (1) who owned Lot 53 when the liens attached and (2) who owned the property at the time of the foreclosure sale. (Id. at 6.) In analyzing whether Gary Werner's transfer of Lot 53 to Bowers was fraudulent under a theory of constructive fraud, the Court observed Bowers had failed to raise an issue of fact "that Werner did not receive consideration for the 2001 quit claim conveyance and that Werner was either insolvent at the time or should have reasonable believed that he would incur debts beyond his ability to pay as they became due." (Id. at 12.) Nevertheless, the Court could not grant summary judgment at the time because it was unclear that Werner owned any property at the time of the 2001 deed. (Id.)

On March 31, 2009, the State of Washington filed a second motion for summary judgment based on newly discovered evidence. In particular, the State has discovered (1) evidence relating to Bowers' 1993 bankruptcy proceeding and (2) testimonial and documentary evidence from a prior owner, Robert Woods. At the outset, the Court agrees that good cause

exists to consider the motion after the summary judgment deadline. (See Dkt. No. 73 at 1.) Defendant the United States responded by acknowledging that its claim is junior to the State's based upon the lien recorded on October 8, 2004 and requests the Court grant the State's second motion. (Dkt. No. 87 at 2-3.) After receiving multiple extensions of time to file a response, Bowers filed a "motion for dismissal/termination of case" on September 18, 2009. In that filing, Bowers stated the "funds may held by Snohomish County may be disbursed according to the agreement by the two government entities." (Dkt. No. 95.)

**Discussion**

I. Motion to Dismiss

Defendant Bowers files his motion pursuant to Fed. R. Civ. P. 11(c)(2). (Dkt. No. 95.) Rule 11(c)(2) describes the procedure for motions for sanctions and does not address dismissal or termination of a case. To the extent Bowers' filing seeks to dismiss the matter based on Rule 11, the motion must be denied.

II. Motion for Summary Judgment

a. Legal Standard

Summary judgment is not warranted if a material issue of fact exists for trial. Warren v. City of Carlsbad, 58 F.3d 439, 441 (9th Cir. 1995), cert. denied, 516 U.S. 1171 (1996). The underlying facts are viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). "Summary judgment will not lie if . . . the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The party moving for summary judgment has the burden to show initially the absence of a genuine issue

3

ORDER GRANTING DEFENDANT
STATE OF WASHINGTON'S SECOND
MOTION FOR SUMMARY JUDGMENT
-- NO. 2:07-CV-875-MJP

concerning any material fact. Adickes v. S.H. Kress & Co., 398 U.S. 144, 159 (1970). However, once the moving party has met its initial burden, the burden shifts to the nonmoving party to establish the existence of an issue of fact regarding an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). To discharge this burden, the nonmoving party cannot rely on its pleadings, but instead must have evidence showing that there is a genuine issue for trial. Id. at 324.

  b. Judicial Estoppel

The equitable doctrine of judicial estoppel "prevents a party from asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding." 18 Moore's Federal Practice § 134.30 (3d ed. 2009). It exists to prevent a party from "playing fast and loose with the courts" by "taking one position, gaining advantage . . . then seeking a second advantage by later taking an incompatible position." United States Ins. Co. v. Spectrum Worldwide, Inc., 555 F.3d 772, 778 (9th Cir. 2009) (citations and internal quotations omitted). In New Hampshire v. Maine, the Supreme Court described a number of factors a court may consider when deciding whether to apply the doctrine of judicial estoppel. 532 U.S. 742, 750-51 (2001). First, the court compares the two positions to determine if the later is "clearly inconsistent." Id. (citations omitted). Second, the court must determine whether the earlier position gained judicial acceptance. The third consideration is whether the litigant would gain an unfair advantage if the later position is accepted such that estoppel is appropriate. Id.

The Ninth Circuit has applied the doctrine in the bankruptcy context to prevent a party from asserting a cause of action it failed to raise as an asset in a reorganization plan. See Hay v.

4

ORDER GRANTING DEFENDANT
STATE OF WASHINGTON'S SECOND
MOTION FOR SUMMARY JUDGMENT
-- NO. 2:07-CV-875-MJP

First Interstate Bank of Kalispell, N.A., 978 F.2d 555, 557 (9th Cir. 1992); Hamilton v. State Farm Fire & Cas. Co., 270 F.3d 778, 784 (9th Cir. 2001) (judicial acceptance prong may be satisfied even if debts are not ultimately discharged).

In this matter, there is no question Bowers did not disclose any claim of ownership over Lot 53 in his 1993 bankruptcy filing. (Stamey Decl., Ex. B at 2 ("Not Applicable" listed under schedule of real property).) His failure to list the property is inconsistent with his claim in this matter that Lot 53 was transferred to him in 1991. (See Dkt. No. 67 at 6.) Bowers' earlier representation gained judicial acceptance when his debts were discharged. (Stamey Decl., Ex. C (discharge order).) The potential for unfair advantage is plain: Bowers could on one hand shield the property from debtors in bankruptcy, then profit from the sale of Lot 53 if he prevails on his claim in this case. Thus, all the New Hampshire factors weigh in favor of applying to doctrine of judicial estoppel to Bowers' claim. 532 U.S. at 750-51. Bowers does not appear to dispute the issue. (See Dkt. No. 95.) The Court grants the State's motion on this issue and finds Bowers is judicially estopped from claiming Lot 53 was transferred to him in 1991 from the Woodses.

In the alternative, the State argues that no reasonable trier of fact could believe Bowers purchased the property from the Woodses in 1991. (Dkt. No. 73 at 6.) Because the Court grants the motion with respect to the judicial estoppel issue, it need not reach the question of what a trier of fact could reasonably believe.

    c. Fraudulent Conveyance

The Court's ruling that Bowers is estopped from claiming he purchased Lot 53 in 1991 necessitates a finding that Werner fraudulently conveyed the property to Bowers in 2001. The Court has observed Bowers failed to raise an issue of fact "that Werner did not receive

5

ORDER GRANTING DEFENDANT
STATE OF WASHINGTON'S SECOND
MOTION FOR SUMMARY JUDGMENT
-- NO. 2:07-CV-875-MJP

consideration for the 2001 quit claim conveyance" and that Werner should have reasonably believed he would "incur debts beyond his ability to pay as they became due." (Dkt. No. 67 at 12.) The only barrier to summary judgment until this point was Bowers' factual claim the property was transferred to him in 1991. (Id.) Because Bowers may not assert a claim that Lot 53 was transferred to him in 1991, the Court believes summary judgment is now appropriate. Werner's transfer of Lot 53 to Bowers by quit claim deed in 2001 was a fraudulent conveyance. Because the property was fraudulently conveyed, the State of Washington and the United States can reach the proceeds of the sale of Lot 53 through the real property liens they filed against Gary Werner. RCW 19.40.071.

**Conclusion**

To the extent Bowers seeks relief under Rule 11, his motion (Dkt. No. 95) is DENIED. Reading the record as a whole, Bowers' filing can be better categorized as acknowledgment that the State's position is valid. The Court GRANTS the State's second motion for summary judgment. (Dkt. No. 73.) Bowers is judicially estopped for claiming Lot 53 was transferred to him in 1991 and, in light of this limitation, the State is entitled to summary judgment that Werner's 2001 transfer of Lot 53 to Bowers by quit claim deed was a fraudulent conveyance. There are no further factual disputes to resolve in this matter. Accordingly, the Court ORDERS that the surplus funds from the foreclosure sale shall be disbursed as follows:

1. The Court Clerk is directed to pay $12,413.44 to DSHS, care of its attorney Lianne S. Malloy at the Office of Attorney General, P.O. Box 40124, Olympia WA, 98504-0124. If this distribution amount exceeds outstanding amounts secured by DSHS' 2004 real property lien, DSHS is directed to send any excess funds to the United States.

2.  The Court Clerk is directed to pay all remaining sums to the United States, in care of its attorney, Michael G. Pitman at the United States Department of Justice, Tax Division, P.O. Box 683, Ben Franklin Station, Washington D.C., 20044-0683; and

3.  Each party shall bear his, her, or its own attorney fees and costs.

Judgment shall be entered and the Clerk is directed to transmit a copy of this Order to all counsel of record and mail a copy to Mr. Bowers.

Dated this 17th day of November, 2009.

*Marsha J. Pechman*
Marsha J. Pechman
United States District Judge